1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:24-cr-00255 JLT SKO |
| Plaintiff, | ORDER RE MOTIONS IN LIMINE |
| v. | (Docs. 72, 73, 74, 75) |
| MARVIN CHARO COLLINS, | |
| Defendant. | |

Mr. Collins is charged with five counts of making false claims against the United States in violation of 18 U.S.C. § 287 in relation to five tax returns submitted to the Internal Revenue Service for tax years 2017 through 2020. (Doc. 1.)

The Defense submitted one motion in limine for resolution before trial (Doc. 74), which the government does not oppose. (Doc. 81.) The government submitted three motions in limine, (Docs. 72, 73, 75), only two of which Mr. Collins opposed. (*See* Docs. 84, 85; Docket.) The Court concludes the matters are suitable for decision on the papers and rules on each of the motions as follows.[1]

## I.    Legal Standards Governing Motions in Limine

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984). The Ninth Circuit explained that

---

[1] On July 17, 2025, Mr. Collins filed an additional motion in limine, which the Court will address by separate order.

motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted). Courts disfavor motions in limine seeking to exclude broad categories of evidence. *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Nevertheless, motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000). The Court will bar use of the evidence in question only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. *Jonasson*, 115 F. 3d at 440.

Moreover, the rulings on the motions in limine do not preclude either party from arguing the admissibility of the evidence discussed herein, if the evidence adduced at trial demonstrates a change of circumstances that would make the evidence admissible. In this event, the proponent of the evidence **SHALL** raise the issue with the Court outside the presence of the jury. Finally, the rulings made here are binding on all parties and not merely on the moving party.

## II.    Discussion and Analysis

### A.    Defendant's Motion Re: Opting to Wear Jail Clothing (Doc. 74)

Mr. Collins has moved in limine to establish that he is entitled to wear jail clothing during the trial if he so chooses. (Doc. 74.) The United States agrees that this is permissible. (Doc. 81.) The cited cases support this motion. Though it may be unconstitutional to compel a defendant to wear prison attire over his objection, it is "not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle v. Williams,* 425 U.S. 501, 507–08, 510 (1976). "Failure to object to the appearance of the accused in identifiable prison clothes, for whatever reason, is a waiver of the right to claim compulsion." *United States v. Rogers*, 769 F.2d 1418, 1423 (9th Cir. 1985); *see also United States v. Shabazz,* 887 F.3d 1204, 1218–19 (11th Cir. 2018) (no error where defendant rejected trial court's "strong suggestion" that

2

1  he change into street clothes); *Pickett v. Duncan,* 80 Fed. Appx. 548 (9th Cir. 2003) (no error

2  where defendant did not inform trial judge that he wished to wear civilian clothing). The Court

3  agrees that Mr. Collins may wear jail clothing if he chooses to do so, so this motion is

4  **GRANTED**. To be clear, if he chooses to do otherwise, he may wear street clothing.

5          **B.**      **Government's Motion to Admit Self-Authenticating Documents (Doc. 73)**

6          The government moves for a pretrial ruling that certain categories of records and official

7  publications as listed in Exhibits 1 through 3 to the government's motion (Docs. 73-1–73-3) be

8  deemed self-authenticating pursuant to Federal Rule of Evidence 902 and that some of the

9  documents also be deemed admissible under relevant exceptions to the rule against hearsay, Fed.

10  R. Evid. 803(6)–(9), 902. (Doc. 73.) The Defense has declined to stipulate to the admission of

11  these records (*see id*. at 4) but has also not opposed the motion in limine. (*See* Docket.)

12          The relevant legal standards are well established. "The foundational 'requirement of

13  authentication or identification as a condition precedent to admissibility is satisfied by evidence

14  sufficient to support a finding that the matter in question is what its proponent claims.'" *United*

15  *States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). "The

16  government need only make a prima facie showing of authenticity, as 'the rule requires only that

17  the court admit evidence if sufficient proof has been introduced so that a reasonable juror could

18  find in favor of authenticity or identification.'" *Id.* (quoting *United States v. Black*, 767 F.2d

19  1334, 1342 (9th Cir. 1985)). "A proper foundation need not be established through personal

20  knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902."

21  *Orr v. Bank of Am.*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902 outlines items of evidence that

22  are self-authenticating, meaning the items of evidence "require no extrinsic evidence of

23  authenticity in order to be admitted." Fed. R. Evid. 902.

24                  **1.**      **Business Records**

25          Federal Rule of Evidence 902(11) provides that "[t]he original or a copy of a domestic

26  record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the

27  custodian or another qualified person" is self-authenticating and does not need to be authenticated

28  at trial to be admissible. Fed. R. Evid. 902(11). For a business record to comply with Rule

803(6)(A)–(C), (1) the record must have been "made at or near the time by—or from information transmitted by—someone with knowledge"; (2) the record must have been "kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; and (3) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6).

The government has provided certifications to accompany each of the records it seeks to admit by this mechanism. (*See* Doc. 73-1.) A review of these certifications confirms that the following certifications associated with specific Government Exhibits (GXs) comply with 902(11) and 803(6).

| Certification GX #(s) | Certifying Witness/Institution | Covered GX(s) |
|---|---|---|
| 75 | Vanessa Martin, Notary Public | 76 |
| 77 | Jonathan Gonzalez, Notary Public | 78[2] |
| 79, 82 | JP Morgan Chase | 80, 83–93[3] |
| 94 | Helen Hammond, Fidelity National Financial | 95-98, 237 |
| 100 | US Bank | 101 |
| 102 | Fidelity Investments | 103–105 |
| 106 | Wells Fargo Bank | 107-137 |
| 238 | Wells Fargo Bank | 239 |
| 138 | First American Title Insurance Co. | 139-143, 146–150 |
| 154 | APMEX Inc. | 155, 156 |
| 157 | JM Bullion | 158 |
| 245 | Portfolio Recovery Associates | 246 |
| 247 | Elk Grove Dodge, Chrysler, Jeep, Ram/Lasher Auto | 248–250 |
| 251 | Pacific Credit Services | 252–254 |
| 255 | Major Motor Cars | 256, 257 |

Because the certifications comply with the Federal Rules of Evidence, because the Defense has had a fair opportunity to review the records, and because the Defense did not oppose the government's motion, the motion to authenticate these business records is **GRANTED**. The government need not have live witnesses testify as to the authenticity of the exhibits listed in the

---

[2] Though the chart provided at Doc. 73-1 does not list the exhibit numbers covered by the certifications at GX 75 and GX 77, the Court can easily identify the covered exhibits by the affixed bates numbers, which are listed in Doc. 73-1.

[3] Collectively, the certifications at GX 79 and GX 82 cover this range of GXs.

table above. For the same reasons the Court finds the above-listed exhibits satisfy the requirements of the hearsay exception set forth in Rule 803(6) and the Government's motion to admit them under that exception is **GRANTED**.

### 2. Public Agency Records

The government sought similar treatment for certain exhibits from the IRS, the United States Postal Service, and the Tulare County Assessor/Clerk Recorder under a combination of Rule 902(11) and/or 902(13)[4]. These entities are government agencies[5], such that, in general, Rule 803(6) does not apply to their records. *See United States v. Morales*, 720 F.3d 1194, 1201 (9th Cir. 2013) (finding error when district court admitted records of a public agency under the business records exception because that exception "does not apply to records of government agencies"). Thus, their authentication is not permissible under Rule 902(11). Likewise, because Rule 902(13) incorporates the requirements of Rule 902(11), the Court concludes public records cannot be authenticated using Rule 902(13) either. Nonetheless, for the reasons set forth below, the documents in this category appear to qualify for authentication under Rule 902(4)(A) (deeming self-authenticating any "copy of an official record — or a copy of a document that was recorded or filed in a public office as authorized by law — if the copy is certified as correct by . . . the custodian or another person authorized to make the certification").

**IRS Records**: GX 170 is a certification from an IRS employee that, among other things, indicates that attached thereto are numerous "true duplicates" of original records in the custody of the IRS. Because that certification appears to satisfy the requirements of Rule 902(4)(A) and these documents appear to be official records of the IRS or copies of documents filed with the IRS as authorized by law, the Court tentatively finds that the GXs listed on pages one through nine of Doc. 73-1 are self-authenticating under Rule 902(4).

**USPS Records**: GX 234 is a certification from a USPS employee as to certain attached

---

[4] Rule 902(13) provides: "A record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12). The proponent must also meet the notice requirements of Rule 902(11)."

[5] The USPS is an "independent establishment of the executive branch of the Government of the United States." 39 U.S.C. § 201.

documents. The certification indicates the attached records are "originals or duplicate copies" of USPS records. The associated GX 235 is an application for a post office box, which appears to be a document that would qualify as one "filed in a public office as authorized by law," so the Court tentatively finds GX 235 is self-authenticating under Rule 902(4).

**Tulare County Assessor/Clerk Recorder Records**: Finally, GX 240 is a certification provided by the Office of the County of Tulare Assessor/Clerk Recorder, which indicates certain attached records are copies of original records in the possession of that office. All the documents associated with this certification appear to be copies "of a document that was recorded or filed in a public office as authorized by law" and thus the certification from the custodian renders them self-authenticating. (Rule 902(4))

To the extent any of these documents *may* be offered for a hearsay purpose, they may qualify under the hearsay exception set forth at Federal Rule of Evidence 803(8). *See Hughes v. United States*, 953 F.2d 531, 540 (9th Cir. 1992) (official IRS documents, even if generated by a computer, are admissible as public records under Federal Rule of Evidence 803(8)). However, the Court is not able to evaluate the application of Rule 803(8) because this issue hasn't yet been raised as to these documents.

### 3.    Certified and Sealed Public Records

The government seeks a pretrial finding that those exhibits listed on Doc. 73-2 are self-authenticating public records that meet the requirements of Rule 902(1) and satisfy the public records hearsay exception under Rule 803(8).

#### a.    Self-Authentication

As to authentication, public records that are "signed and sealed" are self-authenticating under Federal Rule of Evidence 902(1). The Court has reviewed the copies of these documents provided to the Court and finds that they meet the requirements of Rule 902(1). They are all records from qualifying government entities—the IRS, various California and California County entities, and the U.S. Bankruptcy Court for the Eastern District of California—that bear appropriate seals and signatures. (Doc. 73 at 7–10.) The Defense does not suggest otherwise. Thus, they are self-authenticating, so the government need not have live witnesses testify as to

1    their authenticity.

2                              *b.    Hearsay Exceptions*

3        Additional analysis is required to evaluate the application of any hearsay exception. The

4    Court addresses each category of documents in turn.

5                              i.    IRS Records

6        The first set of exhibits listed in Doc. 73-2 are IRS records. As the government correctly

7    indicates (Doc. 73 at 8), there may be non-hearsay uses for many of these documents, such as Mr.

8    Collins' tax filings which may be admissible as a statement of a party opponent. *See* Fed. R. Evid.

9    801(d)(1).

10       The government appears to only request a specific hearsay exemption finding under Rule

11   803(8) as to the IRS tax transcripts, which the government describes in its brief as documents

12   created by the IRS that summarize certain information from tax returns, along with all

13   assessments, penalties, interest, abatements, credits, and refunds disclosed by IRS records relating

14   to that tax return. (*See* Doc. 73 at 8.) Rule 803(8) provides that "[a] record or statement of a

15   public office" is not hearsay if:

16              (A) it sets out:

17                      (i) the office's activities;

18                      (ii) a matter observed while under a legal duty to report, but
19                      not including, in a criminal case, a matter observed by law-
                        enforcement personnel; or

20                      (iii) in a civil case or against the government in a criminal
21                      case, factual findings from a legally authorized
                        investigation; and

22              (B) the opponent does not show that the source of information or
23              other circumstances indicate a lack of trustworthiness.

24   There is authority that suggests IRS transcripts are admissible under Rule 803(8). *See United*

25   *States v. Griffith*, No. 3:09-CV-01197 CSH, 2013 WL 1131422, at *2 (D. Conn. Mar. 18, 2013)

26   (finding tax transcript admissible under Rule 803(8)); *see also United States v. Kuzmenko*, No.

27   2:12-CR-00062 JAM, 2014 WL 1334003, at *2 (E.D. Cal. Apr. 3, 2014)(finding immigration A-

28   file to be exempt from the hearsay bar under Rule 803(8)). Thus, in the absence of any suggestion

1   to the contrary, the Court finds that any tax transcripts listed in Doc. 73-2 satisfy Rule 803(8).

2   *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (where caselaw clearly

3   establishes a category of documents to be public records within the meaning of Rule 803(8), it

4   becomes defendant's obligation to show they are untrustworthy). The motion for finding that

5   these records satisfy Rule 803(8) is **GRANTED**.

6                              ii.         California Department of Motor Vehicles (DMV) Records

7          Next the government seeks a finding that signed and sealed copies of Mr. Collins'

8   California driver's license (GX 74) and vehicle registration information related to a Maserati

9   submitted by Mr. Collins to the DMV (GX 159) are admissible under Rule 803(8). To the extent

10  ultimately are offered for hearsay purposes, these documents satisfy Rule 803(8). This Court

11  recently granted a motion in limine to allow for pretrial admission of a defendant's driver's

12  license presented by way of a certified copy of that record where, as is the case here, the defense

13  did not object. *United States v. Garza*, No. 1:22-CR-00062 JLT SKO, 2024 WL 4216952, at *22

14  (E.D. Cal. Sept. 17, 2024). Relatedly, the registration documents "involve matters observed while

15  under a legal duty to report" pursuant to California Code § 1800(b)(3) and are therefore also

16  admissible under Rule 803(8). The motion for finding that these records satisfy Rule 803(8) is

17  **GRANTED**.

18                             iii.        Deed Records/Secretary of State Records

19         The offered deed records from the Tulare County Assessor/Clerk Recorder (GX 144) and

20  the Sacramento County Clerk/Recorder (GX 152, 153) are admissible pursuant to the public

21  records exception under Rule 803(8) as those entities are required by law to record such

22  documents. *See* Cal. Gov. Code § 27201. The same is true for the California Secretary of State

23  Records (GX 160, 161). *See* Cal. Corp. Code § 21300 (registration of associations). The Defense

24  does not suggest otherwise. The motion for finding that these records satisfy Rule 803(8) is

25  **GRANTED**.

26                             iv.         Certificate of Live Birth/Birth Certificate

27         The Certificate of Live Birth (GX 272) falls under a specific hearsay exception for such

28  documents. Fed. R. Evid. 803(9) (excluding from the hearsay bar "[a] record of a birth, death, or

marriage, if reported to a public office in accordance with a legal duty"). This exhibit is exempt from the hearsay bar on that ground, so the motion is **GRANTED** for that reason.

v.       Bankruptcy Court Records

The final category of documents includes records from the U.S. Bankruptcy Court for the Eastern District of California. (GX 273, 274.) These are: a Voluntary Petition for Chapter 7 bankruptcy filed by Mr. Collins; and a list of creditors provided by Mr. Collins to that court. Such court records are admissible via numerous mechanisms, including judicial notice and under Rule 803(8), but not for the truth of matters stated therein. *See Watson v. Sisto*, No. 2:07-CV-01871 LKK, 2011 WL 5155175, at *3 (E.D. Cal. Oct. 28, 2011), *aff'd sub nom. Watson v. Swarthout*, 536 F. App'x 747 (9th Cir. 2013). The motion is **GRANTED** as to the admissibility of the documents under Rule 803(8), but this does not address the additional layer of hearsay contained within these documents, which has not been argued in the present motion.

### 4.      Self-Authenticating Official Publications

Rule 902(5) provides that a "book, pamphlet, or other publication purporting to be issued by a public authority" is self-authenticating. The government lists at Doc. 73-3 five official IRS publications, which appear on the IRS website. Having examined those exhibits and given that the Defense has had an opportunity to object but has not, the Court concludes that Rule 902(5) is satisfied as to GX 69 through 73 so the motion is GRANTED as to those exhibits. The government need not have live witnesses testify as to their authenticity.

### C.      Government's Motion Re Inadmissible Argument and Evidence (Doc. 72)

The government anticipates that Mr. Collins may seek to present at trial certain arguments and evidence that the government believes should be excluded on grounds of relevance, unfair prejudice and confusion, and hearsay. Therefore, the government moves in limine to preclude the Defense from:

      (1)      making arguments or offering evidence related to inapplicable law;

      (2)      claiming a "good faith belief" defense based on arguments founded on disagreements with the law;

      (3)      offering evidence about his "state of mind" without proper foundation;

(4)    eliciting or offering "state of mind" evidence through third-party witnesses and hearsay statements;

(5)    referencing the potential penalty or punishment during any phase of trial; and

(6)    offering any evidence not provided as reciprocal discovery.

(Doc. 72 at 1.) Mr. Collins opposes this motion in part. (Doc. 85.)

### 1.    Relevant Facts

The charges in this case relate to five Form 1041s Mr. Collins submitted to the IRS for tax years 2017 through 2020, on behalf of the estate Mr. Collins created and named "Marvin C Collins Estate" (MCCE). (*See generally* Doc. 1) In each of these tax filings, the government alleges that Mr. Collins reported false income amounts, false withholding amounts, and claimed a false refund amount. (*Id*. at 2-3.) For the 2018 tax year filing, the indictment asserts that on or about November 14, 2019 (Count Two), Mr. Collins received a refund check in the amount of $682,768.31. (*Id*.) In addition, the IRS asserts that it sent Mr. Collins notices and letters notifying him that some of his tax filings had been deemed frivolous by the IRS. (*See, e.g.*, GX 60.) In response, the government contends that Mr. Collins mailed many of these notices and letters back to the IRS with writings such as, "ACCEPTED FOR VALUE" and "I DON'T RECOGNIZE COLOR OF LAW," (*see id*.), which the government represents is common language used in the sovereign citizen movement, specifically the Moorish movement.

### 2.    Fed. R. Evid. 401/403

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### 3.    Arguments/Evidence Related to Inapplicable Law

The government expresses concern that Mr. Collins may seek to raise improper arguments

10

and/or introduce evidence related to inapplicable bodies of law frequently cited by individuals involved in the sovereign citizen movement and the "redemption"[6] movement. (*See* Doc. 72 at 2 & n. 3.) The government therefore seeks to: (1) preclude the Defense from making any sovereign citizen "strawman" or redemption theory type arguments, including allusions to the existence of secret individual accounts for U.S. Citizens at the Federal Reserve Bank; and (2) prohibit the Defense from referencing at trial or invoking provisions of the Uniform Commercial Code, the Administrative Procedure Act, or any other unrelated body of civil, administrative, regulatory, or international law. (Doc. 72 at 3.)

As to these issues, the government's motion, which is unopposed (*see* Doc. 85), is **GRANTED**. As the authorities cited by the government indicate (*see* Doc. 72 at 3–4), courts around the country have uniformly held that sovereign citizen-type arguments, including but not limited to arguments that the government and the Court do not have jurisdiction over the defendant, are frivolous. Mr. Collins has not suggested how any evidence or argument related to such theories could possibly be relevant to the charges in this case. The Defense may not introduce evidence related to the sovereign citizen ideology, invoke the UCC or maritime law, or introduce any other form of evidence solely related to the sovereign citizen ideology. Should Defense counsel have any doubt about whether questioning or argument will draw close to this line or if the Defense believes that the government has opened the door to any evidence or argument of this nature, they **SHALL** bring the matter to the Court's attention outside the

---

[6] *Marshall v. Florida*, 2010 WL 1248846 (S.D. Fla. Feb 1, 2010), provides a succinct summary of this ideology:

> "Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets. It is increasingly popular among prison populations. The theory advocates that an individual can 'redeem' himself through the filing of commercial documents. According to the theory, the convict has a split personality: a real person and a fictional person called a "strawman." The strawman came into being when the United States went off the gold standard in 1933 and pledged its citizens as collateral for its national debt. Proponents of the theory believe that the government only has power over the strawman and not the real person. The real person, however, can "redeem" the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power.

*Id.*

1    presence of the jury.

2        **4.    "Good Faith Belief" Defense Based on Disagreements with the Law**

3        The government seeks to preclude the Defense from asserting a "good faith belief"

4    defense in this matter. (Doc. 72 at 5–6.) As the government points out, though good faith

5    ignorance or misunderstanding of the tax code negates the willfulness requirement contained in

6    the criminal tax statutes, *see Cheek v. United States*, 498 U.S. 192, 193–94, 202 (1991)

7    (discussing 26 U.S.C. §§ 7201, 7203), defendants in tax cases may not invoke this "good faith

8    belief" defense based solely on their *disagreement* with the law. *Id*. at 201–206 (defendant "is in

9    no position to claim that his good-faith belief about the validity of the Internal Revenue Code

10    negates willfulness or provides a defense to criminal prosecution under §§ 7201 and 7201").

11    Moreover, mere disagreement with the law does not amount to a good faith belief in the

12    truthfulness of his statements. *See, e.g., United States v. Powell*, 955 F.2d 1206, 1212 (9th Cir.

13    1992) (affirming instruction to the jury that "[m]ere disagreement with the law, in and of itself,

14    does not constitute good faith misunderstanding under the requirements of law. Because it is the

15    duty of all persons to obey the law whether or not they agree with it"). Likewise, harboring an

16    opinion that provisions of the tax code are unconstitutional "do not arise from innocent mistakes

17    cause by the complexity of the Internal Revenue Code" and therefore do not negate willfulness.

18    *See Cheek*, 489 U.S. at 205–206.

19        In his opposition, Mr. Collins does not take issue with these general rules. Rather, he

20    suggests that under *Cheek* and *Powell*, evidence about a defendant's subjective beliefs about the

21    Tax Code should go before the jury. (Doc. 85 at 2.) In *Cheek*, the Supreme Court held it was error

22    to not let the jury consider "evidence of Cheek's understanding that, within the meaning of the tax

23    laws, he was not a person required to file a return or to pay income taxes and that wages are not

24    taxable income, as incredible as such misunderstandings of and beliefs about the law might be."

25    498 U.S. at 203. *Cheek* also noted that "the more unreasonable the asserted beliefs or

26    misunderstandings are, the more likely the jury will consider them to be nothing more than simple

27    disagreement with known legal duties imposed by the tax laws and will find that the Government

28    has carried its burden of proving knowledge." *Id*. at 230–204.

Considering these authorities, the motion is **GRANTED IN PART**.[7] The Defense may not assert a good faith belief defense based solely on his disagreement with the law and or any general belief that the Tax Code is unconstitutional or inapplicable, but he may present evidence about any subjective beliefs he might have held as to relevant aspects of his obligations under the Tax Code.[8]

### 5.    "State of Mind" Evidence

Relatedly, the government seeks to preclude the Defense from presenting material related to his state of mind without first laying a proper foundation that he "actually relied" upon that specific material being offered. This unopposed request is supported by authority. *See Powell*, 955 F.2d at 1214 ("In § 7203 prosecutions, statutes or case law upon which the defendant claims to have actually relied are admissible to disprove that element if the defendant lays a proper foundation which demonstrates such reliance. Legal materials upon which the defendant does not claim to have relied . . . can be excluded as irrelevant and unnecessarily confusing because only the defendant's subjective belief is at issue.") (internal citations omitted). Even if the proper foundation is established, the evidence may nonetheless be excluded "as irrelevant and unnecessarily confusing" or for any other Rule 403 reason. *See id*; *see also United States v. Anderson*, 94 Fed. Appx. 487, 492 (9th Cir. March 23, 2004) (where defendants were allowed to offer some materials to demonstrate their theories about tax law, "neither Rule 403 nor dicta in *United States v. Powell* suggests that failing to admit the *additional* material offered by

---

[7] It is not entirely clear that any willfulness requirement applies here, given that the charges in this case are brought under 18 U.S.C. § 287, which does not contain a willfulness requirement. *United States v. Rincon*, 654 F. App'x 867, 868 (9th Cir. 2016). On the other hand, the parties appear to assume that *Cheek* and *Powell* apply to the § 287 claim in this case, perhaps because the "knowledge" requirement of § 287 is "sufficiently analogous to the 'willful' standard at issue in *Cheek*." *See United States v. Wallace*, 40 F. Supp. 2d 131, 135 (E.D.N.Y. 1999), aff'd, 213 F.3d 627 (2d Cir. 2000).

[8] For that matter, the government may demonstrate Mr. Collins understood but disagreed with the requirements of law. *Cheek*, at 202, held, "Of course, in deciding whether to credit Cheek's good-faith belief claim, the jury would be free to consider any admissible evidence from any source showing that Cheek was aware of his duty to file a return and to treat wages as income, including evidence showing his awareness of the relevant provisions of the Code or regulations, of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income." This *may* include introduction of 404(b) evidence that would otherwise be excluded for the purpose of showing knowledge. However, because the government did not adequately explain how the 2023 tax return address knowledge of the law in the 404(b) motion, if it seeks to introduce evidence otherwise excluded below, it **SHALL** first raise the issue with the Court outside the presence of the jury.

1   defendants constituted an abuse of the district court's discretion").

2       Thus, consistent with these authorities, the motion is **GRANTED**. If the Defense intends

3   to do this, the Defense **SHALL** lay a foundation <u>first</u> before seeking to introduce materials upon

4   which Mr. Collins claims to have relied for his beliefs regarding the applicability of the tax laws.

5   Given the potential for prejudice or confusion, the Defense **SHALL** raise the possibility of

6   offering any such evidence outside the presence of the jury.

7           **6.    "State of Mind" Evidence Offered Through Third Parties**

8       The government also seeks to preclude the Defense from attempting, through cross

9   examination of government witnesses or through his own witnesses, to attempt to elicit witness

10  opinions as to what Defendant believed or what others believed. (Doc. 72 at 9.) Though

11  statements of a defendant are not hearsay when they are offered by the government, Fed. R. Evid.

12  801(d)(2)(A), the Defense may not introduce hearsay statements of Mr. Collins or others who do

13  not testify at trial because such statements are not made by a party opponent. Moreover, any

14  attempt to elicit such testimony is problematic for multiple other reasons, including the nature of

15  this case. As the Seventh Circuit pointed out in a case cited by the government (*see* Doc. 72 at 9),

16  *United States v. Hauert*, 40 F.3d 197, 201–202 (7th Cir. 1994):

17          by the nature of a tax protestor case, defendant's beliefs about the
18          propriety of his filing returns and paying taxes, which are closely
            related to defendant's knowledge about tax laws and defendant's
19          state of mind in protesting his taxpayer status, are ordinarily not a
            proper subject for lay witness opinion testimony absent careful
20          groundwork and special circumstances.

21  Thus, such evidence is likely to "not only [be] hearsay, but irrelevant hearsay." *United States v.*

22  *Kahre*, 737 F.3d 554, 577 (9th Cir. 2013). This motion is therefore **GRANTED**.

23          **7.    References to Potential Penalty or Punishment**

24      The Government seeks to preclude reference to any penalty or punishment facing Mr.

25  Collins at any time during trial. (Doc. 72 at 10.) The motion is again unopposed.

26      It is well-established that such references are not relevant to the task of a juror: to find

27  facts and determine whether a defendant is guilty considering those facts. The Supreme Court

28  explained that providing jurors information concerning the consequences of their verdict "invites

14

1   them to ponder matters that are not within their province, distracts them from their factfinding

2   responsibilities, and creates a strong possibility of confusion." *Shannon v. United States*, 512 U.S.

3   573, 579 (1994); *see also United States v. Dredd*, 833 F. App'x 79, 82 (9th Cir. 2020) (extending

4   *Shannon* rationale to jurors being provided with "sentencing information of any kind"). Thus,

5   except for capital trials, the jury "should be admonished to reach its verdict without regard to

6   what sentence might be imposed." *Id.* (internal quotation marks omitted); *see also United States*

7   *v. Frank*, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a

8   jury to consider or be informed of the consequences of their verdict.").

9        Accordingly, the Government's motion is **GRANTED**. Neither party shall reference,

10   directly or indirectly, any potential sentence, punishment, or penalty presented in this case. The

11   jury will also be instructed that such issues are within the exclusive province of the Court and are

12   not to be considered in arriving at a verdict. *United States v. Scarmazzo*, 554 F. Supp. 2d 1102,

13   1109 (E.D. Cal. 2008), *aff'd sub nom. United States v. Montes*, 421 F. App'x 670 (9th Cir. 2011);

14   Model Crim. Jury Instr. 9th Cir. 6.22 (March 2025) ("The punishment provided by law for this

15   crime is for the court to decide. You may not consider punishment in deciding whether the

16   government has proved its case against the defendant beyond a reasonable doubt.").

17           **8.**     **Evidence Not Provided in Reciprocal Discovery**

18        The Government indicates it has not received "any reciprocal discovery" from the

19   Defense, (Doc. 72 at 10), despite the government requesting it (*id.*), and the Court ordering it.

20   (Doc. 9.) Thus, the government asks the Court to preclude the Defense from offering any

21   evidence not provided as reciprocal discovery.  (Doc. 72 at 10.) Mr. Collins has not opposed this

22   motion.

23        Rule 16 governs the disclosure of information by the defendant in a criminal case. *See*

24   Fed. R. Crim. P. 12(b). Specifically, Rule 16 provides that reciprocal discovery of certain

25   information in particular circumstances must be produced and disclosed to the Government.

26   Therefore, to the extent the Defense has undisclosed reciprocal discovery—which is subject to

27   disclosure under Rule 16—the Defense is prohibited from to introduce such information at trial.

28   Fed. R. Crim. P. 12(d)(2)(C). Accordingly, the Government's motion is **GRANTED**.

**D.    Government's Motion to Admit 404(b) Other Acts Evidence/**

**Intertwined Evidence (Doc. 75)**

The government gave notice pursuant to Rule 404(b) that it intends to introduce evidence of the following other acts of Mr. Collins:

(1)    Submitting other false tax returns to the Internal Revenue Service ("IRS") between 2018 and 2024.

(2)    Issuing altered/fictitious checks and checks from bank accounts with insufficient funds.

(3)    Claiming the purchases and attempted purchases of two properties as withholdings.

(4)    Debts owed to various entities listed in Forms 1099-OID and Forms 1099-A.

(5)    Filing for bankruptcy in 2011 and collection of unemployment income between 2013 and 2017.

(6)    Purchasing gold, silver, a Maserati, and two houses with funds generated from false tax returns.

(Doc. 75 at 1.)

In addition, the government indicated that it intends to offer certain evidence related to additional crimes, wrongs, or acts of Mr. Collins that are inextricably intertwined with the charged conduct and therefore not subject to Rule 404(b). (*Id*. at 2.)

**1.    Additional Relevant Factual Background**

As mentioned, the charges in this case relate to five Form 1041s Mr. Collins submitted to the IRS for tax years 2017 through 2020, on behalf of the estate Mr. Collins created: MCCE. (*See generally* Doc. 1.) In each of these tax filings Mr. Collins reported false income amounts and false withholding amounts and then claimed to be owed large tax refunds to which he was not entitled. (*Id*. at 2–3.) To attempt to justify the reported income, withholdings, and claimed refunds, Mr. Collins attached various tax forms to his filings, including Forms 1099-OID (Original Issue Discount)[9]; Forms 1099-A (Acquisition or Abandonment of Secured Property)[10];

---

[9] The term "original issue discount" refers to "the difference between the price for which a debt instrument is issued

1   and Schedule K-1s (Partner's Share of Income, Deductions, Credits)[11]. (*See* GX 1–GX 5.)

2        For the tax returns charged in Counts One, Four, and Five, the attached Forms 1099-OID

3   indicated that Mr. Collins or MCCE provided loans or "debt securities" to various entities,

4   including JP Morgan Chase, Wells Fargo, and Bank of Oklahoma. (*See* GX 1, 4, 5.) The Forms

5   1099-OID purported to document withholdings based on those loans. (*Id*.) However, the

6   government indicates that the evidence will show those loans never existed. (*See* Doc. 75 at 3.)

7   Instead, the amounts listed on the Forms 1099-OID often related to debts that Mr. Collins owed

8   or checks he issued that were returned as "altered/fictitious" or for insufficient funds. (*Id*.)

9        Relatedly, Forms 1099-A attached to the tax returns charged in Counts One, Four, and

10  Five indicated that Mr. Collins acquired property as satisfaction for debts owed by various large

11  financial institutions, often mirroring the Form 1099-OID for the same entity. (*See* GX 1, 4, 5.)

12  The government submits that the evidence will show Mr. Collins never obtained property to

13  satisfy any such debts, nor are there any records of property being abandoned by those entities in

14  satisfaction of any debts to Mr. Collins. (*See* Doc. 75 at 3.)

15               **2.    404(b) Evidence**

16                    *a.    Applicable Legal Standards*

17       Rule 404(a) provides "[e]vidence of a person's character or character trait is not

18  admissible to prove that on a particular occasion the person acted in accordance with the character

19  or trait." Fed. R. Evid. 404(a). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other

20  act is not admissible to prove a person's character in order to show that on a particular occasion

---

21  (the acquisition price) and the stated redemption price at maturity." *See United States v. Gaylor*, No. CV 09-02026 GAF (AJWx), 2009 WL 10673599, at *1 (C.D. Cal. Oct. 28, 2009). For example, "if a taxpayer pays $750 for a bond

22  with a stated redemption price of $1,000, the taxpayer effectively receives $250 in OID." *United States v. Hesser*, 800 F.3d 1310, 1320–21 (11th Cir. 2015). The OID amount is a "form of interest income" that is taxable and

23  reportable to the IRS. *Id*. at 1321.

24  [10] Forms 1099-A are completed when a lender loans money and, in satisfaction of the debt, acquires an interest in property that is security for the debt. *See* Instructions for Forms 1099-A and 1099-C, Internal Revenue Serv. (April

25  2025), *available at* https://www.irs.gov/instructions/i1099ac (last visited July 17, 2025) The lender completes the Form 1099-A and is required to provide a copy of the form to the borrower. *Id*. For example, 1099-As may be

26  completed by banks or loan providers when there is a foreclosure on a debtor's house or property. *See generally Bates v. CitiMortgage, Inc*., 844 F.3d 300 (1st Cir. 2016).

27  [11] For partnerships, a Schedule K-1 "lists the portion of the partnership's profit or loss allocable to  the partner." *See*

28  *United States v. Walsh*, 6 Fed. Appx. 781 (10th Cir. 2001). Each partner reports "the profit or loss allocated to them on their K-1s in their individual, corporate, or partnership income tax returns, as the case may be." *Id*.

1    the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) provides,

2    however, that prior acts evidence "may be admissible for another purpose, such as proving

3    motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

4    accident." Fed. R. Evid. 404(b).

5         The Ninth Circuit has held that "Rule 404(b) is a rule of inclusion." *United States v.*

6    *Alfonso*, 759 F.2d 728, 739 (9th Cir. 1985). "Thus, evidence of past wrongful acts is admissible if

7    it is relevant to an issue other than the defendant's character or criminal propensity." *Id*.

8    Generally, evidence of other acts that explain the nature of the relationship between the defendant

9    and a witness and/or put their interactions into context is admissible under Rule 404(b). *See*

10   *United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir. 1985). Once relevance is established, the

11   district court should admit the evidence unless its prejudicial impact substantially outweighs its

12   probative value. *Id*.

13        Because evidence of other crimes or wrongful conduct is potentially prejudicial, see

14   *Alfonso*, 759 F.2d at 739, it may only be admitted under 404(b) if it: "(1) it tends to prove a

15   material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a

16   finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the

17   act is similar to that charged." *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288–89 (9th Cir.

18   1996)

19                    b.    *Uncharged false tax returns submitted between 2018 and 2024.*

20        In addition to the five false tax returns charged in the Indictment, the government seeks to

21   present evidence that Mr. Collins filed at least twelve other tax returns with the IRS that were also

22   false. (Doc. 75 at 5–6.) The filings included Forms 1041 for MCCE and the "Marvin Charo

23   Collins Revocable Trust" (MCCRT); as well as individual returns for "Marvin C Collins" (MCC)

24   on Forms 1040, U.S. Individual Income Tax Return. (*See* Exhibit A, Doc. 75-1.) The government

25   contends that these uncharged returns are evidence of Mr. Collins' knowledge, intent, state of

26   mind, identity, and absence of mistake.

27        The government asserts that evidence will show there was no income and no federal tax

28   withholdings for any entity as reported in the charged and uncharged returns. (Doc. 75 at 6.) The

18

1    government further submits that IRS records will also that Mr. Collins received at least five

2    letters or notices about his filings being deemed frivolous by the IRS, including: a letter mailed to

3    Mr. Collins on May 9, 2018, in response to a 2017 Form 1041 filed on or about March 6, 2018;

4    and a similar letter in response to the 2018 Form 1041 filed on or about January

5    24, 2019. (*See id.*) According to the government, Mr. Collins received those two letters and at

6    least two other letters or notices before he submitted any of the returns charged in the Indictment.

7    (*Id.*) Upon receiving each letter or notice, Mr. Collins mailed the letter or notice back to the IRS

8    indicating he did not accept the determination. (*Id.*)

9        The government anticipates witnesses from each entity referenced in the Forms 1099-OID

10    and 1099-A attached to the uncharged tax returns will testify that they never received a loan or

11    "debt security" from Mr. Collins, MCCE, or MCCRT; and that the amounts claimed in the Forms

12    1099-OID and 1099-A relate to either a debt Mr. Collins owed to the entity or checks that were

13    returned as "altered/fictitious" or for insufficient funds. (*Id.*) For filings where Schedule

14    K-1s were attached, the government anticipates its witnesses will present evidence indicating that

15    Mr. Collins falsely claimed $755,000 in partnership income from KCS, and that this amount of

16    income is tied to a check that was returned for insufficient funds. (*Id.* at 6–7.)

17        The Defense opposes admission of these uncharged tax returns on the ground that they are

18    not probative of the charged offenses and will "add nothing to this trial but prejudice, confusion,

19    and a waste of time." (Doc. 84 at 2.) This objection is not well founded. With one exception, the

20    uncharged returns are probative of Mr. Collins' knowledge, intent, and state of mind because he

21    continued to submit similar returns even after being told by the IRS that his returns were

22    frivolous. Moreover, the evidence is probative of Mr. Collins' state of mind because he submitted

23    multiple returns, using different methods and entities, until he was successful. *See United States*

24    *v. Jackson*, 845 F.2d 880, 884 (9th Cir. 1988) ("The fact that Jackson submitted prior false claims

25    involving the same [allegedly lost] nine VA checks is probative on issues of intent, knowledge,

26    good faith and absence of mistake in his later dealings with the Treasury Department [the

27    subsequent year]."). The Court is satisfied that as to all but the 2023 return[12], the uncharged

28    _____

[12] But see footnote 8.

1    returns tend to prove knowledge, intent, and state of mind as described above; (2) the prior acts

2    ranging from 2017 to 2020 are not too remote in time from the charged conduct; (3) the evidence

3    appears to be sufficient to support a finding that Mr. Collins committed the uncharged acts; and

4    (4) the uncharged acts are very similar to charged conduct. The government's motion in limine to

5    permit introduction of this evidence pursuant to Rule 404(b) is **GRANTED**. This ruling is subject

6    to reconsideration if presentation of this evidence consumes an excessive amount of time.

7        The one exception is the uncharged tax return from 2023. It is unclear on this record how

8    the filing in mid-2024 of a tax return for tax year 2023 is probative of anything material to the

9    charges in this case given that the last charged return (for tax year 2020) was filed in 2021. The

10    motion is **DENIED** as to the 2023 tax return and any associated documents without prejudice to

11    the government making a more detailed showing outside the presence of the jury under Rule

12    404(b).

13                        c.        *Altered/fictitious checks and checks from bank accounts with*

14                                  *insufficient funds.*

15        Closely related to the above, the government seeks permission to present evidence that

16    Mr. Collins issued approximately nine checks totaling $1,581,775 purporting to be drawn on a

17    Federal Reserve Bank of Chicago account that were returned as altered/fictitious. (*See* Doc. 75 at

18    7.) Mr. Collins later claimed that exact amount in Forms 1099-OID and 1099-A attached to

19    uncharged tax returns filed on March 6, 2018, August 14, 2018, and April 18, 2019. (Doc. 75-1.)

20    The government contends the checks are evidence of Mr. Collins' knowledge, intent, state of

21    mind, motive, identity and absence of mistake, and to show the related tax returns were false.

22    (Doc. 75 at 7.)

23        As with the 2017-2020 uncharged returns discussed above, the Court is satisfied that

24    evidence regarding these checks tends to prove a material fact, including identity. Put another

25    way, the link between the figures submitted in the 1099-OID and 1099-A could support a finding

26    that Mr. Collins submitted those false claims because they correspond to *his* debts. In addition,

27    the evidence is close in time to the charged conduct; the evidence appears likely to support a

28    finding that Mr. Collins issued those checks; and the acts are similar to conduct intertwined with

1    the charged tax returns. The government's motion in limine to permit introduction of this

2    evidence pursuant to Rule 404(b) is **GRANTED**.

3                    d.        *Claiming purchases and attempted purchases of properties as*

4                              *withholdings.*

5            According to the government, in December 2018, Mr. Collins attempted to purchase his

6    current house in Visalia from a family member for $137,000. (Doc. 75 at 7.) As part of the initial

7    attempted purchase, Mr. Collins sent a check for $105,000. (*Id*.) However, the transaction did not

8    close based on the title company's refusal to insure. (*Id*.) Mr. Collins later attached Forms 1099-

9    OID and 1099-A related to that check for $105,000 to a tax return filed on April 10, 2019. (*Id*.)

10           Mr. Collins later purchased the home in part using a check for $104,000. (*Id*.) He then

11   attached Forms 1099-OID and 1099-A related to that check for $104,000 to the same tax return

12   filed on April 10, 2019. (*Id*.) In November 2018, Mr. Collins purchased a different house located

13   in Sacramento using a check for $109,000. (*Id*.) As with the purchase of his home in Visalia, Mr.

14   Collins attached Forms 1099-OID and 1099-A using the information related to that $109,000

15   check. (*Id*.)

16           The government intends to introduce testimony and records from the banks, title

17   companies, and deeds related to these purchases as evidence of Mr. Collins' knowledge, intent,

18   state of mind, motive, identity and absence of mistake, and to show the tax return was false. The

19   Court finds the requirements of Rule 404(b) are satisfied as to this evidence as well. The evidence

20   again tends to prove material facts, for example, that he knowingly intended to defraud the

21   government, and that he did so not by mistake. This is because this evidence tends to show that

22   Mr. Collins knew the source of the amounts listed in the tax returns, and knew they were not

23   related to withholdings. Yet, he nonetheless submitted tax returns claiming them as withholdings.

24   In addition, this evidence is close in time to the charged conduct; supports a finding that Mr.

25   Collins committed the uncharged acts; and is similar to charged conduct. The government's

26   motion in limine to permit introduction of this evidence pursuant to Rule 404(b) is **GRANTED**.

27   ///

28   ///

1                 *e.*      *Debts owed to various entities listed in Forms 1099-OID and*

2                         *Forms 1099-A attached to uncharged returns.*

3       The government submits that Mr. Collins' Forms 1099-OID and 1099-A attached to the

4 uncharged tax returns listed in Exhibit A often related to debts Mr. Collins owed. (Doc. 75 at 8.)

5 Information provided in the Forms 1099-OID and 1099-A, such as the entity name, amounts

6 listed, account numbers, dates, etc., often matched Mr. Collins' debt to each entity. The

7 government anticipates employees from each entity will testify at trial about the debts Mr. Collins

8 owed to each, and that they never obtained a loan or other debt security from Mr. Collins,

9 contrary to his Forms 1099-OID and 1099-A.

10       The government intends to introduce evidence related to these debts as evidence of Mr.

11 Collins' knowledge, intent, state of mind, motive, identity and absence of mistake, and to show

12 the tax returns were false. Again, the Court finds the requirements of Rule 404(b) are satisfied as

13 to this evidence, which (1) tends to prove a material fact, including knowledge, intent, and lack of

14 mistake; (2) the conduct occurred close in time to the charged conduct; (3) the evidence as

15 proffered will support a finding that Mr. Collins committed the uncharged acts; and (4) the acts

16 are similar to charged acts. The government's motion in limine to permit introduction of this

17 evidence pursuant to Rule 404(b) is **GRANTED**.

18                 *f.*      *Bankruptcy filing in 2011 and collection of unemployment income*

19                         *between 2013 and 2017.*

20       Certified bankruptcy court records show that Mr. Collins filed for bankruptcy in 2011.

21 (GX 273.) Among the creditors listed in his bankruptcy filing is Portfolio Recovery Associates.

22 (GX 274.) Mr. Collins later claimed in uncharged false tax returns that Portfolio Recovery

23 Associates had received a loan or debt security from him. (Doc. 75 at 8–9.) IRS records are also

24 anticipated to show that Mr. Collins collected unemployment income between 2013 and 2017.

25 (*Id*. at 9.) The government intends to introduce the bankruptcy and unemployment records as

26 evidence of Mr. Collins motive to later submit false claims to attempt to obtain large tax refunds,

27 as well as for knowledge and intent. (*Id*.)

28       As to the bankruptcy records, the Court agrees with the Defense that, standing alone,

1  evidence of Mr. Collins' bankruptcy appears to be the kind of "poverty motive" evidence that is

2  more prejudicial than probative. *See United States v. Mitchell*, 172 F.3d 1104, 1109 (9th Cir.

3  1999) (evidence that showed no "more than the mere fact that the defendant is poor" could not be

4  introduced to prove the defendant had a motive to obtain money). *Mitchell* does indicate that a

5  jury may be shown evidence that a defendant was "squeezed, not just poor." 172 F.3d at 1109.

6  But the current record does not clearly present such a situation. Mr. Collins filed bankruptcy in

7  2011, well before the charged conduct, and presumably emerged from it with his debts

8  discharged. The inclusion of Portfolio Recovery Associates as a creditor in that filing is probative

9  of Mr. Collins intent to defraud the government given that he later claimed he had instead

10  provided a loan to that same entity. However, because the 2011 filing is many years removed

11  from the charged conduct which began in 2017, it runs afoul of Rule 404(b) for that reason.

12  *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000) (six-year gap "transcends our

13  conception of 'close in time'"). For all these reasons, the government's motion in limine to permit

14  introduction of this evidence pursuant to Rule 404(b) is **DENIED WITHOUT PREJUDICE** to a

15  more specific showing that among other things links Mr. Collins' financial situation in 2011 to

16  the years leading up to the charged conduct.

17      As to the unemployment filings in the years leading up to the charged conduct, the

18  government contends they tend to show motive and intent because "[h]e was in a desperate

19  financial situation that led him to engage in the fraudulent activity." (Doc. 75 at 12.) However,

20  this too is conjectural when compared to the present record. That Mr. Collins collected

21  unemployment insurance during those years does not prove anything other than that he filed for

22  and apparently was granted those payments.[13] The motion is **DENIED WITHOUT**

23  **PREJUDICE** as to that evidence.

24          *g.      Purchases of gold, silver, a Maserati, and two houses.*

25      The government indicates that Mr. Collins used the funds issued by the IRS based on the

26  false tax return charged in Count Two to purchase precious metals, including gold and silver

27

28  [13] Even with the indictment's allegations that Mr. Collins filed false tax returns, this does not mean, necessarily, that he was not eligible for the unemployment benefits.

coins and bars, totaling approximately $292,000 between May 2019 and September 2020. (Doc. 75 at 9.) Mr. Collins also used the funds issued in relation to the Count Two tax return to purchase a used 2016 Maserati in approximately May 2020. (*Id.*) In addition, Mr. Collins used funds issued by the IRS based on his uncharged false tax return filed on March 7, 2018 to purchase the Visalia and Sacramento properties discussed above. (*Id.*) The government seeks to introduce evidence related to him spending the funds he fraudulently obtained as evidence of the Mr. Collins' knowledge, intent, motive, and identity. (*Id.*)

The Defense objects to this evidence on the ground that information about Mr. Collins' "short-lived wealth and spending habits" is an improper appeal to "class prejudice" and envy. (Doc. 84 at 4 (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940)). As the district court explained in *United States v. Holmes*, No. 5:18-CR-00258-EJD-1, 2021 WL 2044470, at *3–4 (N.D. Cal. May 22, 2021), aff'd, 129 F.4th 636 (9th Cir. 2025), "the force of *Mitchell*'s holding" regarding evidence of poverty is "diminished' in the context of wealth evidence, because wealth evidence. . . does not entail the same risk of unfair prejudice." *Id.* (citing *United States v. Flores*, 510 F. App'x 594, 595 (9th Cir. 2013)).

> As with evidence of poverty, evidence of wealth or lavish lifestyle is not admissible standing alone but may be admissible to prove motive, knowledge, or intent. *See United States v. Weygandt*, 681 F. App'x 630, 633 (9th Cir. 2017) (evidence of wealth admissible to show defendant could have purchased necessary equipment but chose not to in order to enhance wealth); *United States v. Reyes*, 660 F.3d 454, 464 (9th Cir. 2011) (evidence of gains from stock option backdating is admissible to permit "jury to draw a reasonable inference that [defendant] knew what he was doing"). Nonetheless, evidence of an individual's lavish spending habits, without a connection to an individual's participation in criminal activity, is irrelevant. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) ("[I]t is irrelevant if [defendant] spent his fortune on lavish parties, instead of donating it to starving Malawian orphans.").

*Holmes*, 2021 WL 2044470, *4; see also *United States v. Ebonka*, No. 2:22-CR-00156-CDS-NJK, 2025 WL 326911, at *3 (D. Nev. Jan. 29, 2025) (government permitted to present evidence and argument that defendant's wealth was related to the fraudulent scheme).

Here, it appears that the evidence of at least some of these purchases will be relevant to prove identity. The government submits that the evidence will show money from the charged

activities went into an account opened by Mr. Collins and he then purchased real property discussed above in the name of MCCE. (*See* GX 144.) This is probative of the link between Mr. Collins and MCCE. Likewise, the Maserati purchase documents show that the car was purchased by an entity called Nest Egg Vault LLC, with a physical address in Visalia CA, (*see* GX 159), so those records also appear to be probative of identity. The motion is **GRANTED** as to these categories of evidence, subject to the condition that the government meet and confer with the Defense to discuss whether there are ways to redact some of these documents (e.g., the Maserati purchase) to minimize any prejudicial effect, such as by redacting the brand name of that vehicle.

However, it is less clear how the records related to Mr. Collins' purchases of precious metals (e.g., GX 158) are probative of any material fact. The records indicate that numerous bars of metal and coins were mailed directly to Mr. Collins, but the Court cannot discern how these records are probative of any identity issue that may be material in this case. The motion is therefore **DENIED WITHOUT PREJUDICE** to a more robust showing as to the relevance of these records so that the Court can properly perform the required analysis.

### 3.    Intertwined Evidence

In addition, the government provides notice that it intends to offer the evidence related to additional crimes, wrongs, or acts of Mr. Collins that are inextricably intertwined with the charged conduct, specifically:

(a)    Evidence related to the issuance of checks drawn from bank accounts with insufficient funds which Mr. Collins then falsely claimed on Forms 1099-OID and 1099-A that were attached to the tax returns charged in Counts One and Two.

(b)    Evidence related to a debt Mr. Collins owed Tesla, which matched information Defendant submitted in forms attached to the tax returns at issue in Count Four.

Rule 404(b) is inapplicable to other acts evidence that is "directly related to, or inextricably intertwined with, the crime charged in the indictment." *United States v. Lillard*, 354 F.3d 850, 854 (9th Cir. 2003). "Evidence is 'inextricably intertwined' when it either constitutes a portion of the transaction giving rise to the criminal charge, or is necessary to allow the prosecution 'to offer a coherent and comprehensible story regarding the commission of the

1    crime.'" *United States v. Yandell*, 2024 WL 694373, at *2 (E.D. Cal. Feb. 20, 2024) (quoting

2    *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)). "There must be a

3    sufficient contextual or substantive connection between the proffered evidence and the alleged

4    crime to justify exempting the evidence from the strictures of Rule 404(b). *Vizcarra-Martinez*, 66

5    F.3d at 1013. This motion, which is unopposed, is **GRANTED**. The evidence in question appears

6    to be intertwined with the charged conduct for the reasons described above.

7    **III.    CONCLUSION**

8          For the reasons set forth above:

9    1.     Defendant's motion regarding opting to wear jail clothing (Doc. 74) is

10         **GRANTED**.

11   2.     The government's motion to admit self-authenticating records (Doc. 73) is

12         **GRANTED IN PART** as detailed above.

13   3.     The government's motion to preclude the Defense from offering inadmissible

14         evidence and argument is **GRANTED IN PART** as detailed above.

15   4.     The government's motion to admit 404(b) and intertwined evidence (Doc. 75) is

16         **GRANTED IN PART** as detailed above.

17

18   IT IS SO ORDERED.

19      Dated:    **July 18, 2025**

         UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

26